This is a compensation suit in which plaintiff claims to have been permanently and totally disabled as the result of injuries sustained in an accident during the course of his employment.
The trial Court rendered judgment in favor of defendant from which plaintiff brings this appeal.
As stated in the reasons for judgment, which were dictated into the record immediately upon conclusion of the trial by our learned brother of the district Court, there is no question as to the accident nor the injury. The only defense, and, therefore, the only point at issue, is that plaintiff completely recovered from the effects of the injury.
No question of law is involved in this case. Counsel for plaintiff, in argument and brief before this Court, called attention to the fact that he cited no law, inasmuch as a determination of the matter rests solely upon a question of fact. Counsel for defendant concurred in this view, and stated in brief that there are no controversial issues of law here involved.
Our examination of the record accords with these pronouncements, and we, therefore, proceed to a discussion of the established facts and a resolution of the disputed point as to the existence vel non of disability.
A little before daylight, on the morning of November 30, 1945, plaintiff was working at a drum which was running wood into a chip feeder. It appears that sticks of pulpwood of various sizes and weights were *Page 77 
carried from the wood yard by means of a conveyor chain to the drum. While plaintiff was engaged in his duties at the drum a stick of wood became disengaged from the conveyor chain at a point several feet above the drum and fell or was thrown from the conveyor. The stick of wood struck plaintiff in the face with such force as to knock him against the wall of the room in which he was working. There is a conflict in the testimony as to whether the stick of wood struck plaintiff on the right or the left side of the face; as to what part of his head was thrown in contact with the wall, and as to his condition, whether conscious or semi-conscious. In the light of other facts which are established beyond question, these points are immaterial and have no significance.
Plaintiff was examined shortly after the accident by Dr. J.E. McConnell, the physician employed by the defendant company. X-rays were made and plaintiff was hospitalized for about eleven days and was kept under observation by Dr. McConnell at two-week intervals until about the 15th or 16th of April, 1946, when he was discarged as being recovered. Compensation was paid from the date of the injury until the 18th day of April, 1946.
The testimony is conclusive as to the effect that plaintiff was dazed by blows he received; that he began to bleed from the mouth, nose and ears, and that it was necessary for him to be assisted to a sort of storeroom where he had to await attention until the first aid room, closed during the night hours, was opened. The only apparent contradiction of these facts which we designated as having been conclusively established is found in the testimony of the first aid nurse employed by the defendant, who stated that she examined plaintiff shortly after 8:00 o'clock; observed no blood from the ears or nose; found him normal in his reactions and in his responses to her questions, and concluded that he was not seriously injured. The witness further testified that she thought plaintiff might have been suffering from a fractured bone in the face, but that this was not a matter of such importance as to justify hospitalization. The witness did find that the inside of plaintiff's jaw was lacerated and there was evidence of bleeding from the mouth.
We are unable to explain the discrepancy between the testimony of this witness and the overwhelming preponderance of the testimony of other witnesses on the same points, and, therefore, we are forced to dismiss the witness' testimony insofar as it is in conflict with the facts clearly established through the testimony of other witnesses.
Four expert medical witnesses testified on behalf of plaintiff as to the opinions and conclusions they had reached after examination bearing upon the character of injury received by plaintiff and his resulting condition. These distinguished gentlemen were in agreement in expressing the opinion that plaintiff had suffered a basal skull fracture with consequent injury to the brain and brain tissues which rendered him totally and permanently disabled to continue the performance of manual labor.
An opposite conclusion was reached in the opinions expressed by four equally distinguished medical witnesses who testified on behalf of defendant, thus posing the usual question necessitating determination by a court made up of laymen.
Three sets of x-rays were in evidence on trial of the case; one made immediately after the injury under the direction of Dr. McConnell, the company physician; another made by Dr. C.H. Mosley, to whom the plaintiff was referred for examination and x-ray on April 19, some three or four days after he had been discharged as sufficiently recovered to return to work; and a third, made on the occasion of the examination of plaintiff by Dr. W.L. Bendel who appeared as a witness for defendant.
In this case we have an existing situation somewhat different from the usual case involving the interpretation of x-rays inasmuch as it is conceded by the expert witnesses on both sides that basal fractures of the skull are rarely clearly and certainly discernible and identifiable in x-ray pictures. For this reason, it appears to us the history and character of the injury, the immediate physical symptoms and the subjective symptoms are of more than usual weight and importance. *Page 78 
We find no difficulty in determining that plaintiff suffered a severe blow in the face from the stick of pulpwood falling from the conveyor chain and another forcible blow to the head as a result of being thrown against the wall; and that he bled from the mouth, nose and cars. This latter fact is not only well established by lay testimony but is borne out in the testimony of Dr. McConnell, the defendant's physician, who stated that upon his examination shortly after the accident, he found blood in the mouth, nose and both ears.
We are particularly impressed by the testimony of Dr. McConnell, who unhesitatingly stated that his original diagnosis was of a basal fracture of the skull, and who further testified on trial of the case that his diagnosis remained as a possible basal fracture of the skull. Despite his adherence to this diagnosis, the distinguished doctor testified that he felt plaintiff had sufficiently recovered to permit return to employment because he had found no symptoms, with the exception of the bleeding, to which reference has been made, which would definitely establish the correctness of his diagnosis.
We are able to eliminate as having no substantial weight in the consideration of this point the testimony of one other of defendant's expert witnesses which involved only the result of an eye and ear examination of plaintiff made a few days before trial, the results of which were negative.
Another of defendant's witnesses, Dr. W.L. Smith, a roentgenologist, did not see nor examine plaintiff, and testified only as to his conclusions on the basis of an interpretation of the x-ray films made on the date of the accidental injury.
The testimony of Dr. W.L. Bendel on behalf of defendant was made after a thorough physical examination of plaintiff, and the witness stated that he could not find objective evidence of any disability on the basis of his examination or his study of the x-rays made at the time of such examination.
Careful study of the opinions expressed by all of the medical experts leads to certain definite conclusions, first, that the nature of the injury and the immediate symptoms were unquestionably indicative of a basal fracture of the skull; second, that no objective symptoms of the existence of such an injury are evidenced by physical examinations of plaintiff on various dates subsequent to the accident, and, finally, that the determination of the issue of fact as to plaintiff's continued disability must be resolved upon the basis of subjective symptoms which, if accepted as existing, bear out the claim of disability and indicate the existence of an injury to the brain and its tissues as the result of a basal skull fracture.
Without doubt, the violent difference of opinion between the medical witnesses in this case is explained by the fact that plaintiff's claims that he suffers from spells of dizziness and blindness, and that exertion makes him "foolish and drunk in the head, and I get where I can't see, and if I don't sit down it seems I will fall down as soon as I get in the sun or get the least warm," were accepted by witnesses for the plaintiff and rejected by witnesses for the defendant.
It is particularly noticeable that none of the witnesses for defendant testified that these symptoms would not be indicative of continued disability, likely because they were not examined on this point.
Now it has been frequently stated by the courts of this State that subjective symptoms alone, unless strongly substantiated and corroborated, are not sufficient to establish the right of an employee to recover compensation. But in numerous instances our courts have taken the opportunity to re-emphasize the rule that each case must be determined on the basis of the facts presented therein.
In the case before us we find what appears to be a rather uncomplicated and well-established sequence of facts which may be briefly summarized as follows:
(1) Plaintiff was the victim of violent blows to the face and head which were immediately followed by bleeding from the mouth, nose and both cars.
(2) He was treated for a basal skull fracture and the employer's doctor who treated plaintiff still adheres to this diagnosis.
(3) At the time of trial there appeared to remain no objective symptoms which *Page 79 
in ordinary course might have been expected to develop from a brain injury.
(4) Plaintiff claims to have continued to suffer from dizziness, intermittent spells of blindness, severe headaches, discomfort and pain.
(5) These complaints of plaintiff are substantiated and corroborated by the testimony of additional lay witnesses.
The first proposition, as above stated, was established by the testimony of plaintiff and three fellow employees. The truth of the second proposition is implicit in the testimony of Dr. McConnell. The third proposition, which is not uncontradicted, must, nevertheless, be regarded as having been established by a preponderance of the testimony of the several medical experts. Necessarily, the fourth proposition must rest upon the testimony of plaintiff himself, but, as set forth in our fifth statement above, plaintiff is corroborated by his wife, his brother and one other witness. In connection with this point we feel it is proper to observe that we have thoroughly studied the testimony of these several witnesses and find no indication of the existence of any circumstance which would unfavorably reflect upon the credibility of these witnesses or militate against the acceptance at face value of their testimony.
[1] Examined in the light of the requirement of preponderating evidence, we are impelled to find as a fact that this plaintiff is totally and permanently disabled. It is true that such a finding is at variance with that of our learned brother of the district court, but careful study of his opinion convinces us that he erred in attributing too much importance to the circumstance that this plaintiff, after being discharged from further treatment on or about April 15th or 16th, as able to return to work, did not thereafter return to the company doctor to seek further treatment for the alleviation of his suffering and disability. Our learned brother of the district Court permitted himself to be influenced by this circumstance on the ground that such action did not accord with the normal and reasonable behavior of one who, in good faith, believed himself to be suffering from the effects of a disabling injury.
We do not view the matter in this light. On the contrary, we feel that such conduct on the part of this plaintiff is the normal and expected reaction. A negro employee, having been under treatment for some months by his employer's doctor, would naturally, or so we believe, feel some considerable hesitancy, after being discharged as recovered, in returning to the same source for further ministration, with complaints of continued pain and discomfort. The record in this case presents the inescapable inference that almost immediately after his discharge from treatment this plaintiff must have consulted an attorney with regard to his rights, and it is established as a fact that he was examined by another doctor within four days at most after he was pronounced recovered by the company physician. In view of these circumstances and the conclusions to which they lead, we cannot help but regard the judgment of the district Court as being in manifest error.
The Court has been confronted in the circumstances surrounding the trial and presentation on appeal of this case, with a matter which has caused it much concern in many instances. We feel impelled on this occasion to advert to a discussion of certain points in connection with this case which we hope will lead to a greater understanding and a better relationship as between counsel, litigants, witnesses and courts, particularly in the conduct of compensation cases.
Implicit in this record, in oral argument and in briefs of the opposing counsel, are certain displeasing reflections. This is not by any means the first case, nor is it one of a few, in which this same burden of doubt and suspicion has been injected, but the members of this Court feel that a discussion of the facts involved in the instant case offers the opportunity for an expression of the attitude of this Court, and we believe that likely the feelings of this Court are shared by the members of other courts which are called upon to pass upon similar matters.
[2] In the records, oral arguments and briefs in connection with the prosecution of compensation suits it has come to be *Page 80 
a matter of course to find open or lightly veiled attacks upon the good faith of witnesses, particularly members of the medical profession, and especially upon those who have by reason of the character of their personal practice, been frequently cast in rather consistent roles, either for the employer or the employee. This is also true, and, perhaps, in even greater degree, with respect to employees. Further than this, the implications have been extended to the point where they would seem to impugn the good faith of members of the bar and of the judiciary.
While it may be a matter to which we have grown somewhat accustomed, and which little by little we have come to accept without comment, it is not a healthy condition which has been developed under which certain doctors, lawyers or judges have come to be referred to either openly or inferentially as an "employer's" doctor, or lawyer, or judge, and, conversely, as an "employee's" doctor, or lawyer or judge.
Similarly, we feel that it is out of place for respective opposing counsel in cases of this kind to pursue such a course in the trial and presentation of a case as would indicate, even if not by actual open appellation, a conclusion which would have the effect of stigmatizing a claimant as a malingerer, or an employer as a conscienceless defrauder of honest laborers.
To our minds there is nothing discreditable nor suspicious in the circumstance that certain doctors should be repeatedly called as witnesses on behalf of employee claimants, nor that other doctors should repeatedly appear as witnesses in behalf of employer defendants, any more than it can be regarded as a matter of suspicion and discredit, reflecting upon the individuals, that some estimable members of the bar are almost exclusively corporation lawyers, while others consistently represent compensation claimants. It is the nature of the practice of each individual that casts him in one or the other of these roles. If doctors and lawyers, recognized and regarded as reputable and ethical practitioners of their respective professions, must subject themselves to charges of bias or prejudice merely by reason of their appearance in litigated matters of this type, then the time is not far distant when only those members who desperately cling to the bare outer fringes of these honored professions will feel justified in representing either of the parties to such character of litigation, and, in such event, perforce, both employers and employees will suffer, and justice in the determination of such matters will be rendered more difficult as a consequence.
This Court does not look upon plaintiffs claiming compensation as likely malingerers, but, on the contrary, it has regarded them in the past, and will continue so to regard them in the future, as honest and bona fide claimants of rights guaranteed them under the laws of this State, unless and until in specific cases the open, direct, and unequivocal charge of malingering shall be made and legally established. As a corollary to this proposition, we state that it will be the purpose of this Court in future, as it has been in the past, to examine and consider the testimony of qualified medical experts as being fair, just and impartial, unless, in particular instances, there shall be evidence of partiality or prejudice. Similarly, the Court will continue to look upon counsel for plaintiffs and defendants as sincere and ethical advocates, expecting from them that diligence, zeal and friendly partisanship, in the presentation of the cause of the party litigant represented, to the best possible advantage, subject only to the requirements and bounds of reason and good faith.
It is our hope that members of the bar in conducting this character of practice before this Court in the future will bear in mind the statement of these principles and thereby relieve the Court of any further unpleasantness in connection with its consideration of this character of litigation.
For the reasons set forth, the judgment appealed from is reversed and set aside, and there is now judgment in favor of plaintiff, Henry Bridges, for compensation at the rate of Twenty and No/100 ($20.00) Dollars per week during the period of disability, not to exceed four hundred (400) weeks, payable in weekly installments, beginning December 7, 1945, with five per cent (5%) per annum interest on each *Page 81 
installment from the date due until paid, subject, however, to the allowance of proper credit for compensation payments heretofore made for the period beginning December 7, 1945, up to and including April 18, 1946.
There is further judgment reserving plaintiff's rights to hereafter claim medical expenses. It is further ordered that the agreement between plaintiff and his counsel of record for payment of the maximum fee allowed under the compensation statute for services rendered be, and it is hereby, recognized.
It is further ordered that the expert witness fees of Drs. C.H. Mosley, H.V. Collins, J.E. Walsworth and I.J. Wolff, witnesses for plaintiff, be, and they are hereby fixed in the sum of $25 each and taxed as costs herein.
All costs of both Courts to be borne by defendant-appellee.